AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of ⟩
*(Briefly describe the property to be searched* ⟩
*or identify the person by name and address)* ⟩ Case No. 1:22-mj-83
⟩
A Black and Gray LG Phone, IMEI 358309782103579, ⟩
Currently in ATF Property at 550 Main Street, Room ⟩
8-491, Cincinnati, OH 45202 ⟩

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated by reference).

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(6) | False Statement During Purchase of Firearm |
| 18 U.S.C. § 922(a)(1)(A) | Unlicensed Dealing in Firearms |
| 18 U.S.C. § 371 | Conspiracy |

The application is based on these facts:

See Attached Affidavit (incorporated by reference).

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Michelle Nelson*

*Applicant's signature*

Michelle Nelson, ATF Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____FaceTime Video Conference_____ *(specify re*

Date: __Feb 9, 2022__

Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

## ATTACHMENT A

The property to be searched a black and gray LG phone bearing IMEI 358309782103579, in

ATF Property for Case Number 773011-22-0007, listed as Item Number 006, currently located at

ATF Cincinnati Field Office, 550 Main Street, Rm 8-491, Cincinnati, OH 45202.

 

This warrant authorizes the forensic examination of the Device for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of

18 U.S.C. §§ 922(a)(6) (False Statement During Purchase of Firearm), 922(a)(1)(A) (Unlicensed

Dealing in Firearms) and/or 371 (Conspiracy) and involve JERMAINE PULLEY and NYLISHA

HILL since July 2021, including:

      a.   Records and information relating to a conspiracy to make straw purchases of
firearms;

      b.   Records and information relating to the sale or trafficking of firearms;

      c.   Records and information relating to the identities and whereabouts of
coconspirators to the scheme;

      d.   Records and information relating to the proceeds of the sale or trafficking of
firearms;

      e.   Records and information relating to phone numbers, email addresses, social media
accounts, and other accounts used by coconspirators to the scheme.

2.      Evidence of user attribution showing who used or owned the Device at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that

can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF A
BLACK AND GRAY LG PHONE, IMEI
358309782103579, CURRENTLY IN ATF
PROPERTY AT 550 MAIN STREET, ROOM
8-491, CINCINNATI, OH 45202

Case No. ___1:22-mj-83_____

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Michelle Nelson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—that is currently in law enforcement possession, and the extraction from that

property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and

Explosives (ATF), and have been so employed since July 2020.  I graduated from the ATF

Special Agent Basic Training Academy, located in Glynco, Georgia, in October of 2020.

3.      In my career with ATF, I have been assigned to the Cincinnati Field Office in the

Southern Judicial District of Ohio. Prior to my employment with ATF, I was a member of the

United States Secret Service (USSS) in Washington D.C., where I served as a member of the

Uniformed Division under the Presidential Protective Division. I was employed in that capacity

from September of 2000 to 2004, and as a Crime Scene Technician from 2004 to April 2007.

From April 2007 to July 2020, I served as a Special Agent of the USSS, assigned to the

Cincinnati Field Office as well as USSS Headquarters, under the Protective Intelligence and Assessment Division. I took part in various criminal investigations during my tenure, including investigations in which I reviewed the contents of suspects' electronic devices. I have received additional training in several areas of law enforcement, including but not limited to narcotics interdiction and investigation and firearms interdiction and investigation. I am also a graduate of the University of Texas where I received a bachelor's degree in Government in 2004.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officials and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched (the **"Device"**) is a black and gray LG phone Model: LM-K200TM bearing IMEI 358309782103579, in ATF Property for Case Number 773011-22-0007 as Item Number 006, currently located at ATF Cincinnati Field Office, 550 Main Street, Rm 8-491, Cincinnati, OH 45202.

6.      The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

**A. Introduction**

7.      ATF and the U.S. Attorney's Office are investigating a suspected conspiracy to

make illegal straw purchases[1] of firearms involving Nylisha HILL and Jermaine PULLEY, as well as suspected firearms trafficking by PULLEY.

8.      As I describe in more detail below, on October 12, 2021, HILL and PULLEY visited a firearms dealer in the Cincinnati, OH, area, where HILL attempted to purchase firearms. The attempted purchase was denied due to an employee's suspicion that HILL was buying the firearm for someone else. Less than an hour later, HILL and PULLEY went to another firearms dealer, where HILL successfully purchased two firearms. After completing the purchase, HILL left the store, but she returned minutes later and attempted to purchase two more pistols. This time, the store denied the purchase due to suspicion that HILL was buying the firearms for someone else.

9.      A few weeks later, in November 2021, after PULLEY was charged with a violation of his probation for a separate alleged offense, PULLEY's probation officer, in accordance with the terms of PULLEY's probation, searched PULLEY's cell phone.  That search revealed that PULLEY'S cell phone contained images of firearms, including one matching a firearm HILL bought on October 12, 2021. The search also revealed images and posts made to social media showing that PULLEY was soliciting multiple firearms for sale. The Probation Officer did not return that cell phone to PULLEY, who was eventually released from custody.

---

[1] The term "straw" purchase refers to a purchase in which the buyer, in violation of 18 U.S.C. § 922(a)(6), falsely represents to a Federal Firearms Licensee that he or she is purchasing a firearm for him- or herself, when in fact the firearm is being purchased for someone else.

3

10.    In January 2022, PULLEY was arrested by ATF Special Agents after an arrest warrant was issued for him in Case No. 1:22-CR-001 (S.D. Ohio). At the time of his arrest, PULLEY had a different cell phone on him: the **Device**.

11.    I am now seeking a search warrant for the **Device**, because, as I explain in more detail below, there is probable cause to believe that it will contain evidence of violations of 18 U.S.C. §§ 922(a)(6) (False Statement During Purchase of Firearm), 922(a)(1)(A) (Unlicensed Dealing in Firearms) and 371 (Conspiracy).

**B.  On October 12, 2021, at around 10:26 a.m., HILL, with PULLEY, attempted to buy firearms from Shoot Point Blank – Cincy West.**

12.    Surveillance video shows that on October 12, 2021, at about 10:26 a.m., HILL, accompanied by another unidentified woman (the "Unidentified Woman") entered Shoot Point Blank – Cincy West, located at 7266 Harrison Avenue, Cincinnati, OH 45247. Seconds later, two men—one who is unidentified (the "Unidentified Man"), and another who was later identified as PULLEY (as I explain below)—also entered the store.

13.    In an interview on December 7, 2021, I discussed with an associate who was on duty at Shoot Point Blank that day what he remembered about the transaction. I first showed the associate the surveillance video to assist him with recalling the event. The associate said he remembered that the woman in pink pants (later identified as HILL, as I explain below) had entered the store with another woman and two men. The associate said the men had walked around together and asked to look at different models of firearms, but that HILL and the other woman did not look at any firearms or seem interested in them. The associate said HILL and a man wearing blue (later identified as PULLEY, as I explain below) then remained in the store while the other two left. According to the associate, HILL then told the associate she wanted to

4

purchase a firearm, and PULLEY said he was going to pay for it. The associate provided both HILL and PULLEY with an ATF Form 4473 – Firearms Transaction Record.

14.     Based on my training and experience, I know that, during the purchase of a firearm from a Federal Firearms Licensee (FFL), the purchaser is required to provide identifying information and is subject to an FBI National Instant Criminal Background Check System (NICS) query. There are four possible outcomes of this query: Proceed, Delayed, Denied, and Cancelled.  "Proceed" authorizes the FFL to transfer the firearm to the purchaser.  Delay commands the FFL not to transfer the firearm until a determination is made on the FBI NICS check or (if no determination is made) until three days have passed. "Denied" commands the FFL not to transfer the firearm to the purchaser. "Cancelled" indicates that the proposed transaction has been cancelled.

15.     According to the associate, PULLEY objected to filling out the ATF Form 4473, saying that it was not his firearm and that he was purchasing it for HILL. The associate said this was suspicious to him because HILL had not participated in the shopping process and had not looked at any firearms, including the one she had asked to purchase, before attempting to buy it. The associate said he told HILL and PULLEY that since PULLEY was paying for the firearm, PULLEY would have to fill out the ATF Form 4473. According to the associate, PULLEY asked him why he needed to fill out the form, and the associate said he believed the sale to be a "straw" purchase[2] and that it was a felony for HILL to purchase a firearm for PULLEY or anyone else.

_____

[2] As noted above, the term "straw" purchase refers to the purchase of a firearm on behalf of someone else. The instructions to Question 21.a of the ATF Form 4473 – Firearms Transaction Record explain: "For purposes of this form, a person is the actual transferee/buyer if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself (e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this

5

The associate said he then told HILL and PULLEY that he was denying the sale due to PULLEY's refusal to fill out the form, at which point HILL and PULLEY left.

**C. About 35 minutes later, HILL, accompanied by PULLEY, bought two firearms from Shoot Point Blank in Blue Ash and then attempted to buy two more firearms.**

16. Surveillance video shows that, at about 11:30 a.m. that same morning (about 35 minutes after they left Shoot Point Blank – Cincy West), HILL, PULLEY, and the two unidentified individuals arrived at Shoot Point Blank – Blue Ash, located at 10930 Deerfield Road, Cincinnati, OH 45242, in a red Ford Mustang convertible.

17. The Unidentified Man got out of the front passenger seat of the car to allow HILL to get out of the back seat of the two-door vehicle. Once HILL had gotten out, the Unidentified Man got back into the front passenger seat. PULLEY, the driver, then got out of the car and met HILL on the sidewalk behind the car.

18. The surveillance video shows that PULLEY then handed HILL an item that appears to be a wad of U.S. currency. Below is a zoomed-in screenshot of the surveillance video at the moment before PULLEY handed the suspected U.S. currency to HILL:

---

form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm."



19.     Surveillance video shows that, after HILL and PULLEY entered the store, they

began looking at the firearms on display.

20.     Surveillance video also shows that, at about 11:33 a.m., while PULLEY and

HILL were still inside Shoot Point Blank – Blue Ash, HILL handed PULLEY a cell phone. At

other times on October 12, 2021, the surveillance video captured HILL holding a cell phone or

tablet, too.

21.     Based on surveillance video, witness interviews, and my review of documentation

from Shoot Point Blank – Blue Ash, I know that, shortly after HILL and PULLEY entered the

store, an associate from Shoot Point Blank – Blue Ash gave HILL an ATF Form 4473 –

Firearms Transaction Record.

22.     The surveillance video shows that, at about 11:56 a.m., HILL removed U.S.

currency from her left pant pocket and gave it to the sales associate. HILL then completed the

purchase of a Taurus Model G3C, 9mm caliber pistol bearing serial number ACJ242804, and a

Taurus Model G2C, 9mm caliber pistol bearing serial number ACH129427, for total price of

$614.44. A receipt related to this purchase shows that she paid with $620.00 in U.S. currency.

7

23.     Surveillance video shows that, at about noon, HILL left the store by herself and returned to the red Mustang. The Unidentified Male then got out of the front passenger seat and allowed PULLEY to get into the back seat. A few minutes later, PULLEY came out of the store and returned to the driver's side of the Mustang, where he appeared to lean into, or sit in, the vehicle, with the driver's side door open.

24.     A few minutes later, at about 12:07 p.m., the surveillance video captures the Unidentified Male getting out of the front passenger seat and HILL getting out from the back passenger seat. In the moment when she is getting out of the car, HILL can be seen holding an item in her left hand. As HILL approaches the store, the surveillance video shows that the item in her hand appears to be more U.S. currency, as shown below:



25.     In an interview on December 3, 2021, an associate who was on duty at Shoot Point Blank – Blue Ash on October 12, 2021, told me that, when HILL came back inside the store, she tried to buy two more Taurus pistols. This time, the sales associates told HILL they were not going to sell her any other firearms due to the suspicious nature of the purchase.

8

Surveillance video shows that HILL then went back to the Mustang, which departed at about 12:15 p.m.

**D. HILL represented on ATF Form 4473 that she was purchasing the firearm for herself, and not for another person.**

26.     On the ATF Form 4473 – Firearms Transaction Record that HILL completed on October 12, 2021, HILL represented that she was purchasing the firearm for herself and not for another person.

27.     Specifically, Section 21.a of ATF Form 4473, which must be completed by the purchaser of the firearm, asks: "Are you the actual transferee/buyer of the firearm(s) listed on this form?  Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.  Exception:  If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a and may proceed to 11.b. (See Instructions for Question 11.a.)"  HILL answered this question by checking the box labeled, "Yes," as pictured below:

| 21. Answer the following questions by checking or marking either the "yes" or "no" box to the right of the questions: | | Yes | No |
|---|---|---|---|
| a. | Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning:  You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**  Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b. | ☑ | ☐ |

**E. On October 28, 2021, PULLEY was arrested on an unrelated arrest warrant, and a probation search of the Device revealed evidence that he was trafficking firearms, including at least one of the firearms HILL bought.**

28.     On June 24, 2021, PULLEY was assigned to Community Control and directed to report to the Hamilton County Probation Department (HCPD) in relation to Case No. B1802658-1 through Case No. B1802658-5. That same day, PULLEY signed HCPD's General Rules for Probationers, which includes twelve detailed rules for the signing probationer to follow. Rule 3

states, "I will not own, possess, or carry a firearm or other lethal weapon." Rule 9 states, "I am subject to search in accordance with Ohio Revised Code Section 2951.02. The search includes, but is not limited to, the search of my person, place of residence, motor vehicle, cell phone, purses and other packages."

29.     On October 19, 2021, a warrant was issued for PULLEY's arrest in relation to an attempted theft allegedly committed by him on October 7, 2021.

30.     On October 28, 2021, PULLEY was arrested by HCPD Probation Officer (PO) Brandon Adams in relation to the outstanding arrest warrant. The same day, pursuant to Rule 9 of HCPD's General Rules for Probationers, PO Adams searched PULLEY'S cell phone.

31.     During his search of PULLEY's cell phone, PO Adams took pictures of images and text communications related to firearms. PO Adams identified more than 15 images of firearms that it appeared PULLEY was offering to sell to various individuals since approximately July 2021. For example, on October 12, 2021, at 2:24 p.m.—about two hours after HILL purchased the Taurus firearms described above—PULLEY sent a message to someone that included a photograph of a Taurus handgun in a box, writing: "G3 Taurus brand on the box," as pictured below:



32.     As another example, at an unknown time, but before October 21, 2021, at 10:16

p.m., PULLEY sent to "Tae" an image that appears to depict a Taurus G3C pistol. As shown in

the second image below, the pistol appears to bear serial number ACJ242804—i.e., the serial

number of one of the firearms HILL purchased:

 

11

**F.  PULLEY's Probation Officer identified him as the person in blue in the surveillance footage.**

33.     PO Adams's search of PULLEY's cell phone was conducted as part of HCPD's

own investigation. Later, HCPD provided the information about the photos of firearms on

PULLEY's cell phone, as well as the cell phone itself, to ATF.

34.     On December 7, 2021, ATF agents showed PO Adams a still photo from the

surveillance footage from outside Shoot Point Blank – Blue Ash. PO Adams said that the person

in the photograph who was wearing a blue shirt reading "Self Made" appeared to be PULLEY.

35.     On December 7 and 9, 2021, Industry Operations Investigator Bill Halusek

queried the ATF Federal Licensing System to determine if HILL or PULLEY, respectively, is

currently, was previously, or has a pending application to become a Federal Firearms Licensee

(including a licensed importer, licensed manufacturer, licensed dealer, or licensed collector).

The result of both queries was negative.

**G.  In January 2022, PULLEY was arrested and had a difference cell phone with him: the Device.**

36.     After PULLEY was arrested by his probation officer in October 2021, as

described above, he was eventually released on bond.

37.     In January 2022, a grand jury returned an indictment charging PULLEY with

crimes relating to the straw purchases described above, and a warrant was issued for his arrest.

*See* Case No. 1:22-CR-001 (S.D. Ohio).

38.     On January 10, 2022, PULLEY was arrested and had the **Device** in his

possession.  On January 10, 2022, the **Device** was placed into ATF Property as ATF Property

Item 006.

**H. The Device likely contains relevant evidence.**

39.     As explained above, the **Device** is currently in the lawful possession of the ATF having been placed into ATF property after PULLEY's arrest.  Therefore, while ATF might already have all necessary authority to examine the **Device**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Device** will comply with the Fourth Amendment and other applicable laws.

40.     The **Device** is currently in storage at the ATF Cincinnati Field Office, 550 Main Street, Rm 8-491, Cincinnati, OH 45202.  In my training and experience, I know that the **Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Device** first came into the possession of ATF.

41.     Based on my training, experience, and research, I know that the **Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. In this case, as noted above, there is evidence that both HILL and PULLEY had cell phones on October 12, 2021; and, based on my training and experience, I know that coconspirators commonly communicate via calls and text messages and that phones commonly contain photos and other evidence of crimes, as explained in more detail below. Moreover, even if the **Device** is a new phone that PULLEY got after his arrest in October 2021, the evidence described above shows that PULLEY is engaged in an ongoing scheme of making illegal purchases and sales of firearms, giving probable cause to believe that any new phone would also contain evidence of ongoing trafficking.

13

42.     Additionally, based on my training and experience, I know that individuals engaged in criminal activity commonly possess and use more than one cell phone at a time. For example, I know that it is common for individuals involved in drug trafficking, and in illegal trafficking more generally, to possess one phone that is used to communicate with suppliers and another that is used to communicate with customers; in this way, even if law enforcement identifies and intercepts one of the phones, it is more difficult to identify the full scope of the trafficking organization. Similarly, it is common for individuals engaged in criminal activity to possess one phone that is their "anchor" phone (i.e., a phone that they keep for a longer period) and another phone that is a "drop" or "burner" phone, which they can abandon easily if necessary. As a final example, I know it is common for those engaged in criminal activity to possess one phone that is used to communicate with criminal coconspirators and another "clean" phone used primarily to conduct personal business. Based on my training and experience, I know that even such supposedly "clean" phones often contain evidence relevant to the crimes under investigation, such as evidence of a suspect's location at a particular time, contact information of coconspirators, and relevant photos.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

43.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period on the device.  This information can sometimes be recovered with forensics tools.

44.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

14

the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15

f.   I know that when an individual uses an electronic device to offer firearms for sale or to conspire with others, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

45.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

46.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

47.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Device** described in Attachment A to seek the items described in Attachment B.

16

## **REQUEST FOR SEALING**

48.     It is respectfully requested that this Court issue an order sealing, until further

order of the Court, all papers submitted in support of this application, including the application

and search warrant. I believe that sealing this document is necessary because the warrant is

relevant to an ongoing investigation into a criminal conspiracy, including an investigation into

the individuals who may have illegally purchased firearms from PULLEY.  Premature disclosure

of the contents of this affidavit and related documents may have a significant and negative

impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*Michelle Nelson*
_____
MICHELLE NELSON
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Subscribed and sworn to via FaceTime videoconference on February __9__, 2022.

_____
Karen L. Litkovitz
**United States Magistrate Judge**

17

## **ATTACHMENT A**

The property to be searched a black and gray LG phone bearing IMEI 358309782103579, in

ATF Property for Case Number 773011-22-0007, listed as Item Number 006, currently located at

ATF Cincinnati Field Office, 550 Main Street, Rm 8-491, Cincinnati, OH 45202.

 

This warrant authorizes the forensic examination of the Device for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of

18 U.S.C. §§ 922(a)(6) (False Statement During Purchase of Firearm), 922(a)(1)(A) (Unlicensed

Dealing in Firearms) and/or 371 (Conspiracy) and involve JERMAINE PULLEY and NYLISHA

HILL since July 2021, including:

> a.   Records and information relating to a conspiracy to make straw purchases of
>      firearms;
>
> b.   Records and information relating to the sale or trafficking of firearms;
>
> c.   Records and information relating to the identities and whereabouts of
>      coconspirators to the scheme;
>
> d.   Records and information relating to the proceeds of the sale or trafficking of
>      firearms;
>
> e.   Records and information relating to phone numbers, email addresses, social media
>      accounts, and other accounts used by coconspirators to the scheme.

2.      Evidence of user attribution showing who used or owned the Device at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that

can store data) and any photographic form.